IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.

DAVON AMOS JOHNSON,

           Defendant.

No. 3:24-cr-74-REP

### The Government's Sentencing Memorandum

The United States recommends that the Court sentence Davon Amos Johnson, (hereinafter, "the defendant"), to 63 months of imprisonment. The defendant's illegal possession and brandishing of a firearm, after having two prior convictions for weapons offenses, one of which involved shooting someone, prove that he presents a serious danger to the community. A sentence of 63 months adequately accounts for the nature, circumstances, and seriousness of the offense, and the need to deter criminal conduct, promote respect for the law, and protect the public, while being not greater than necessary.

### The Presentence Report and Applicable Guidelines Range

The United States has no objections or corrections to the presentence investigation report. The defendant has a total offense level of 17 and a criminal history category of VI, resulting in an advisory guidelines range of 51 to 63 months of imprisonment. PSR ¶ 81-82.

### Relevant Facts

On August 4, 2023, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm, to wit, a Beretta 92FS, 9mm Luger, semiautomatic pistol, bearing serial number BER219453Z,

and accompanying ammunition, in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(g)(1). PSR ¶ 4.

On August 4, 2023, Richmond Police Officers were called to Burger Bach, located at 3426 W. Cary Street, in Richmond, Virginia, to investigate an altercation between two employees, one of whom was the defendant. *Id.* On scene, Officer Warner noticed the defendant standing in the parking lot at the back of the restaurant. *Id.* The defendant ran to an adjacent parking lot and dropped a firearm in the adjacent parking lot. *Id.* Officer Warner secured the firearm, which was a Beretta 92FS, 9mm Luger, semiautomatic pistol, bearing serial number BER219453Z, loaded with eight rounds of 9mm ammunition. *Id.*

On April 17, 2024, a federal grand jury returned an indictment charging the defendant with possession of a firearm and ammunition after felony conviction, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1; PSR ¶ 1. The defendant pleaded guilty to count one of the Indictment on September 30, 2024. PSR ¶ 2. Sentencing is currently scheduled for January 30, 2025. ECF No. 37, 42.

## Argument

A 63-month sentence is within the advisory guideline range and is sufficient, without being greater than necessary to fulfill the purposes of sentencing as set forth in Section 3553(a).

### I.     Nature and Circumstances of the Offense

The nature and circumstances of the offense are egregious and are aggravated by the fact that the defendant committed this offense against a colleague at work, just five months after being released from prison, where he served an eight-year sentence.

While on a break at work, the victim was outside talking with a friend when the defendant walked up wearing a mask, with a t-shirt in his hand. PSR ¶ 5. The defendant

mentioned something about what happened between them the day before, and the victim walked away. *Id*. Not willing to accept that response, the defendant pulled out a firearm and pointed it at the victim, who was walking away. *Id*. When the victim turned around, he saw the defendant holding a firearm. *Id*. Other employees witnessed the incident, one of whom was so distraught that she had to be taken away via ambulance to regulate her blood pressure. *Id*.

After serving eight years on a prior felony gun offense in the City of Richmond, the defendant was back in the community, proving that in just five months, he was unwilling to abide by the law, and that he has not learned from his past mistakes. He armed himself as a violent felon, which is dangerous behavior, especially considering that when the defendant did so in 2016, he callously shot someone. Thus, the nature and circumstances of the defendant's crime require that he be held accountable, and the public be protected. A 63-month term of imprisonment would serve this purpose, without being greater than necessary.

## II.     The Defendant's History and Characteristics

The defendant's criminal career began as a juvenile, when he was charged with drug distribution at the age of 15. PSR ¶ 36. Instead of being convicted of that offense, the defendant received the opportunity for a deferred finding of guilt, and the case was taken under advisement, then ultimately reduced to possession of marijuana. *Id*. Two years later, at the age of 17, the defendant was arrested for brandishing a firearm and assaulting a family member. PSR ¶ 37. Again, the Richmond Juvenile and Domestic Relations Court gave the defendant the opportunity for a deferred disposition, and the firearm charge was ultimately nolle prossed. *Id*.

Four months later, at the age of 18, the defendant was arrested for possessing a concealed weapon and providing a false identification to law enforcement. PSR ¶ 24. According to police reports, the offense occurred on July 28, 2014. Officers were on patrol in the City of Richmond

when they observed the defendant and another male fighting on Harwood Street. *Id*. While speaking with officers, the defendant provided a false date of birth. *Id*. The defendant gave an inconsistent statement about why he and the male were fighting, and when officers were speaking with him, a firearm fell from the defendant's pants, after which, he admitted that he had taken the firearm from the other male. *Id*. By November 20, 2014, the defendant was arrested and charged with robbery, using a firearm in the commission of a robbery, and trespassing, though the case was ultimately nolle prossed. PSR ¶ 38.

On November 11, 2014, at the age of 18, the defendant was arrested for trespassing. PSR ¶ 25. The police report reflects that the defendant was trespassing on Richmond Redevelopment Housing Authority ("RRHA") Property after having been barred from the area four days prior. *Id*. When confronted, the defendant tried to flee, but was quickly apprehended. *Id*. In January 2015, the defendant was convicted and given the benefit of an all-suspended jail sentence. *Id*. Despite that chance to avoid jail time, the defendant was back on RRHA property one month later. PSR ¶ 26. Richmond Police Officers received a call for loud music at an apartment on Rosecrest Avenue, and when they arrived, they spoke with the defendant and two other males. *Id*. The defendant again provided a false date of birth and, also, a false name. *Id*. When the officers determined whom he was, they realized that he had active warrants for robbery, use of a firearm in the commission of a felony, and that he was already barred from RRHA property. *Id*. He was ultimately charged and convicted of trespassing and ID theft to defraud. PSR ¶ 26-27.

A few weeks later, in April 2015, the defendant was arrested and charged with three counts of possession with the intent to manufacture or sell schedule I/II controlled substances. PSR ¶ 28. He was ultimately convicted of an amended charge for manufacturing controlled substances. *Id*. Just five months after his felony drug charges were reduced, the defendant was

4

arrested and charged with attempted murder and using a firearm in the commission of a felony, related to an offense that occurred around December 4, 2015. PSR ¶ 29, 41. According to police reports, the defendant was hanging out with his brother and his friend when they decided that they wanted to smoke weed, so the friend's girlfriend called her friend to buy some weed. PSR ¶ 29. The defendant went with the young woman to meet her friend. *Id.* They got into her friend's vehicle, and the defendant sat behind the driver. *Id.* After the woman and her friend exchanged money for marijuana, the defendant decided that he was going to rob the friend. *Id.* The defendant pulled out a firearm and told the driver to "kick that shit," which the victim understood to be a demand for his property. *Id.* When the victim attempted to jump out of his vehicle, the defendant shot him in the back. *Id.* The bullet entered the victim's right shoulder blade, ricocheted off his scapular spine, and lodged in his neck. *Id.* The defendant was ultimately convicted of robbery, malicious wounding, and using a firearm in the commission of those felonies, and sentenced to serve eight years, with another 30 years suspended. *Id.*

The defendant was released from the Virginia Department of Corrections ("DOC") on March 6, 2023, PSR ¶ 70, and in less than six months, he committed the instant offense then fled the scene as a fugitive. PSR ¶ 4. On September 2, 2023, Henrico County Police Officers encountered the defendant while investigating a domestic incident, and during his interaction with police the defendant again provided a false identification, for which he was later convicted and given another two-month jail sentence. PSR ¶ 30. The defendant's serious and extensive criminal record is reflected in the criminal history score of six. PSR ¶ 33, 82.

Certainly, the defendant did not have the easiest childhood, which likely impacted his repeated decisions to engage in criminal behavior. PSR ¶ 46-47, 51-55. In his early years, he did not have a stable home, as his parents were violent with one another, and his father would

5

leave for days, possibly to use drugs.  PSR ¶ 51.  The defendant reported that he witnessed his father using crack cocaine when he was a child and that his parents fought about his father's drug use.  *Id*.  The defendant recalled times when they did not have enough food to eat, could not afford to pay their electricity bill, and were even evicted from their home.  *Id*.  Though that home life was not ideal, the defendant reported that he always had a parent around and that he and his siblings were not subjected to abuse from their parents.  *Id*.

When the defendant was in fourth grade, his parents separated and he and his mother briefly moved to North Carolina, then settled in Crewe, Virginia.  PSR ¶ 52.  The defendant reported that his new home was in a "peaceful and rural area," and that his mother worked to support their family.  *Id*.  The defendant recalled his mother's new boyfriend lived with them and they did not have the type of abusive relationship that he experienced between his parents.  *Id*.  The defendant liked his new school, because his teachers showed interest in his education and the student-to-teacher ratios were better.  *Id*.  However, the defendant claims that his sister emotionally and physically abused him while their mother was at work, at times, locking him in a closet for hours, and only "throw[ing him] scraps of food," to eat.  PSR ¶ 53.  When the defendant was in nineth grade, he and his family moved back to Richmond, Virginia, but they quickly lost their home and ended up in Hillside Court, where the defendant recalls prevalent crime.  PSR ¶ 54.

Though the defendant's upbringing had some very low points, many of which children should never experience, the defendant's criminal history suggests a concerning pattern of escalating violence.  A 63-month sentence accounts for these considerations and concerns, without being greater than necessary.

**III.    Seriousness of the Offense; Provide Adequate Punishment**

The seriousness of the defendant's offense necessitates a meaningful sentence. Possessing a loaded firearm, which the defendant pointed at a co-worker, who was unarmed and walking away is intolerable. One of the primary concerns of felons illegally obtaining and possessing firearms is that they may use them to harm others. It took just five months of the defendant being back in the community before he armed himself, pointed a gun at an unarmed person, then fled from the police, and tossed a loaded firearm.

Therefore, a sentence of 63 months reflects the seriousness of the offense and is required to provide adequate punishment for someone who did not learn from his previous convictions, involving illegal firearm possession and use.

**IV.    Need to Deter Future Criminal Conduct; Promote Respect for the Law**

Beyond the defendant's criminal record, as outlined in section II, he has received several opportunities to improve his behavior and failed to do so.

When the defendant was facing sentencing in 2016, after robbing and shooting an innocent person, his father's fiancé reported to the court that the defendant had "changed a lot," since the offense, and that he is a "sweet, loving, and very kind person," who "got mixed up with the wrong people at the wrong time." PSR ¶ 58. She further claimed that the defendant "made a mistake and may have been high on Xanax," because he was "devastated over losing his mother." *Id*. If the assertions of the defendant's father's fiancé were genuine, he had the opportunity to prove her right when he entered the DOC in 2016.

While in DOC, the defendant sustained 18 disciplinary infractions, including being under the influence of drugs on three occasions, gambling/possessing gambling equipment or paraphernalia two times, failing to follow written or posted institutional rules and regulations two

7

times, disobeying an order four times, being in an unauthorized area, delaying/hindering/interfering with an employee in the performance of their duties three times, possession or use of a weapon, possession of stolen property, and fighting. PSR ¶ 29.

Rather than starting on a new, law-abiding path when released in March 2023, the defendant returned to his old ways on August 4, 2023, again using a firearm against another person – the exact behavior from which his father's fiancé believed he had "changed."

Not even a new arrest could convince him to forge a new path. When the defendant was arrested on September 2, 2023, he was detained at the Richmond City Justice Center. By November 2023 he was involved in a serious fight with another inmate, which involved the defendant striking the fellow inmate with a sharpened object and the inmate striking the defendant with a broken broomstick. PSR ¶ 62.

The defendant's criminal record, behavior while serving a lengthy sentence in DOC, and his behavior since his release and new arrest, all counsel in favor of a 63-month sentence to deter his future criminal conduct and underscore respect for the law.

**V.       Need to Protect the Public**

A person with a prior violent conviction for shooting someone, who returns to the community, arms himself again, points a firearm at another innocent person, then runs from the police, lies about his identity when captured, and assaults an inmate while awaiting trial, represents a serious danger to the community. A sentence of 63 months is necessary to protect the public, without being greater than necessary.

**VI.      Need to Provide Training and Treatment**

The defendant would likely benefit from educational and vocational training while incarcerated. He reported that he dropped out of high school in tenth grade and has not been

8

employed since 2023. PSR ¶¶ 74, 76-78. A presentence report from 2016 provided that the defendant attended school through the eleventh grade, but, either way, he is not a high school graduate, and has not earned his general education diploma. PSR ¶ 74-75. Thus, receiving both educational and vocational training would set him up for success when he is released.

The defendant could also benefit from mental health treatment while incarcerated. He reportedly suffers from PTSD and depression, has nightmares, and often feels paranoid. PSR ¶ 66-67. The presentence report in 2016 detailed that the defendant was diagnosed with Bipolar Depression at age 18, and that he was treated at Tucker's Pavilion for depression after being shot when he was 17. PSR ¶ 68. To be productive while incarcerated, and upon release, the defendant needs to be mentally stable.

Finally, the defendant would likely benefit from substance use treatment. Though he declined to answer any questions regarding substance abuse, he was a daily user of marijuana in his teens and early twenties and has been previously treated in an outpatient setting for substance use issues. PSR ¶ 73. Thus, a substance abuse assessment and any necessary treatment would be beneficial to his success post-release.

**VII.    Need to Avoid Unwarranted Disparities**

A guidelines sentence of 63 months for illegally possessing a firearm as a convicted felon will ensure that no unwarranted disparity exists between the defendant's sentence and the sentence of a similarly situated defendant.

**Conclusion**

This Court should impose a guideline sentence of 63 months. Such a sentence satisfies the § 3553(a) factors, without being greater than necessary, emphasizes the seriousness of the

offense, promotes respect for the law, protects the public, and encourages the defendant not to return to criminal conduct upon his release.

                                                    Respectfully submitted,

                                                    JESSICA D. ABER

                                                    United States Attorney

By:         /s/_____
            Katherine E. Groover
            Virginia Bar No. 89213
            Counsel for the United States
            United States Attorney's Office
            919 East Main Street, Suite 1900
            Richmond, VA 23219
            Phone: (804) 819-5400
            Fax: (804) 771-2316
            Email: Katherine.groover@usdoj.gov